We'll hear the next case, Toossie v. Allstate Insurance. Good morning, your honors. My name is David Yaffe. May it please the court, I represent the appellant Robert Toossie. This flood insurance case involves a number of issues that have been fully briefed by the parties. There are three points that I would like to stress today. First, there is no genuine dispute that the District Court erroneously determined that there was a functional equivalency between the plaintiff's home at 290 Exeter and the other property at 285 Coleridge. And Allstate now finally admits that there was not even a full payout on the limits of the policy for the Coleridge property, as the District Court erroneously thought. Second, it is apparent that Allstate has abandoned its argument that the one-year rule set forth in Section 7H3 of the insurance policy applies to bar Mr. Toossie's breach of contract claim. Third, there can be little genuine dispute that the District Court correctly held that the agent who misapplied Mr. Toossie's premium payment was Allstate's agent, not Mr. Toossie's agent, for purposes of that error. So where does that leave us? And what is this court supposed to do? We submit that the proper focus is upon what occurred with respect to the premium payment for the policy for 290 Exeter, period. And it is improper to look at what occurred. But didn't your client fail to give the notice that the contract required with respect to the non-payment of Exeter, of not receiving notices? Isn't that right from a contract claim? The tort's claim is a different issue. The contract claim, doesn't the contract require your client to give notice if they are not being notified? Respectfully, Your Honor, the answer is no. Because you have to look at the language of that one-year limitation, which was actually a grace period. That one-year limitation rule only applies where Allstate has prepared an actual renewal notice and either didn't put it in the mail or mailed it to the wrong address. That's the only circumstance in which it applies. And under basic rules of contract interpretation, you can't make that apply to this other situation where they never prepared, let alone mailed, a renewal notice. That would change the terms of the contract. It would change the terms of that provision, which appears as a regulation. And it would just create a new kind of requirement. And so our position... Could you just articulate for us the breach of contract claim? I mean, what is the contractual obligation? What is the breach? Okay. So our breach of contract claim is that Mr. Tucci was provided with an offer by Allstate to renew his policy. He accepted that offer by tendering a check to Allstate's agent. Allstate deposited the check. Unfortunately, it misapplied it to a different property not owned by Mr. Tucci. And as a result of that... So there was a binding contract. And under the governing rules and the statute 42 USC 4104AC, Mr. Tucci was thereafter entitled to a cancellation notice and a renewal notice one year later. He never received that. All right. Let's assume that's all correct. He was entitled to notices. He didn't get them. What would the remedy be? I mean, you're arguing that in essence, the remedy is the policy has to be deemed in effect. Is that what you're arguing? And if so, what is the basis for saying what the remedy is? Yeah. The argument is indeed that the policy remains in effect. There's only one provision that would limit it to a one-year term. And that's the provision I was just talking about that does not apply. So we would respectfully submit that a rule of reasonableness applies. Had the one-year rule applied, the policy would have extended for another year from February 18, 2011 to February 18, 2012. His home was destroyed eight months later. And it's our position that it is not unreasonable to have it carry over to cover that destruction. And I don't submit that New York state law covers this, but it's interesting... State law did apply. The policy would continue indefinitely until such time as the insurance... I think that's specifically what federal law does not. I understand that, but I'm just... Let me ask you this. Assuming we were to agree with you that all state breached its contractual obligation to generate renewal notices, why are you able to maintain a contract claim in light of the SFIP terms that make the insured responsible for notifying the insurer of non-receipt of a renewal notice? I mean, I understand that that too would not ever be required under state law, but it is the SFIP. Well, the statute... You cannot forget that the statute 4104AC mandates that the insurance carrier notify... I understand that, but then there's an obligation by your client when the year passes and there's no renewal to say, you know, I didn't get a renewal notice on this contract. And your client didn't fail to do that one year, but two years. He certainly didn't think he was getting insurance for nothing. I understand that he might have thought he had insurance once he passed. I'm having trouble understanding how you have a contract claim for two years down the road in light of this notice obligation your client had. Okay. First, I heard Judge Calabresi ask if this was a federal statute I was referring to or a state statute. It's a federal statute. And in terms of the contract, this is a policy. And the one-year provision in the policy doesn't apply. And the case law on insurance in the world... You're not answering my question. Well, I am trying to answer your question, Your Honor. My position is that there is no situation in the policy and under the rules that apply to insurance disputes, whenever there's any... Would your position be the same if five years had gone by? It would. But my argument is... How long under this, when he doesn't get any notices, he knows he is not being insured, does he have the right just to sit there and not say, you're not telling me anything? Where in the contract is there anything? Then I'd like to turn to the torts one because that's an interesting issue to answer. Just how long can he do this? Well, I submit that a rule of reasonableness applies. And I'm not sitting here saying it applies for 50 years or anything like that. But my point is that the hurricane occurred eight months after... If the one-year rule did apply, that would have carried him over to February... Judge, before you move to torts, may I just finish to get an answer to my question? I'm torts. I think you said that there was nothing in his insurance policy that required him to give notice that he didn't get a renewal notice. That is the standard flood insurance policy. His standard flood insurance policy made him responsible for notifying the insurer of non-receipt of a renewal notice. Your Honor, I respectfully disagree. The provision that you're referring to is a grace period that applies in a situation... It's a one-year grace period that applies in a situation where an insured does not receive the notice and advises the carrier that they did not receive the notice. And if the carrier then finds that it had in fact prepared the notice, which did not occur here, and that it either never mailed it or mailed it to the wrong address, then the one-year rule applies. But this grace rule does not transform into an obligation for an insured to say, hey, I didn't receive my renewal notice. I'm sorry, what? I didn't hear. Why isn't it a fortiori after the grace period? Why doesn't what's within the grace period make sense make even more sense later? Because you can't extrapolate. Once you're in a situation like we are here, where there's no specific rule that applies, then you fall back to the in the policy is against the carrier, not against the insured. And to do so would violate that rule if you applied an a fortiori. Why don't you turn to the TORC claim and take a couple of minutes on that. I mean, unless you want me to talk about the agency issue. No, I'd like you to address a one, what for me is a serious question in the TORC issue, and that is whether this is preempted. Because, you know, that's if it is preempted, then you lose. Because FISPA rules are pretty clear that there wouldn't be. But the question of preemption, it seems to be that it is preempted if it is just a renewal. And the question is, is this a renewal or this was not as a new policy, which the Fifth Circuit has said is not preempted? I'm not sure I fully follow the question, Your Honor. On the TORC claim, the district court found that had the inquiry been just into the agency issue, it would have ruled in Mr. Tucci's favor. But then it went further and allowed Allstate to evade liability upon this ground that, well, the payment was applied to another property owned by Mr. Tucci's, owned by him. No, I understand. But yeah, I understand what the district court did with respect to that. But my question is, does FISPA preempt the TORC claim so that a state TORC claim does not exist? And under the federal law, is your TORC claim barred because you may not put the government in that situation? Oh, now I understand what you're saying, Your Honor. I apologize. The federal statute is very clear that the federal government does not indemnify an agent for its improper actions. This lawsuit is against the agency. This lawsuit is not against the federal government. And so, you know, we cited to statute 42 U.S.C. 4081C, which makes it crystal clear. If that is so, and the federal claim does not exist here, why is the TORC action in federal court at all? That is, if we were to decide against you on the contract claim, then isn't what you have left a TORC action, which is a straight state TORC action? And shouldn't we say that that ought to be dismissed without prejudice to being brought in state court? And the state can then decide all the questions, including whether agency exists, because I'm not quite as sure that the agency issue is as simple. I'm not saying the district court was wrong, but it's a question of state law. And if it's a question of state law, I kind of like the state to let me know about it. Well, that's an interesting proposal or concept, Your Honor. But the agency issue is decided by application. I mean, that's what all states are arguing, by application of a federal rule. They're relying on a federal rule to evade. Yeah, but that's all assuming that this is part of in federal court because of a federal claim. And I'm just saying, if the contract claim fails, don't we have, precisely because there is no indemnity, a plain and simple state court claim and then why should we decide it? Well, I imagine that my adversary would be very upset with such a result because now we don't know. I understand. But now we would have a flood insurance policy claim being determined by a state court. And, you know, I would respectfully submit that it would properly preserve that there's no requirement for that to take place and that it would preserve judicial resources to resolve the tort claim as Justice, as Judge Block was on the cusp of doing had he not gone on into this area of equivalency. Okay, thank you. Um, so I see that I'm way over time. You have some time for rebuttal. Let's hear from okay, thank you, your colleague, and then you'll get another shot at it. Mr. Pennekamp. Good morning, your honors. Thank you for hearing me. Sorry for the video lapse there. My name is Mike Pennekamp of Fowler White Burnett. I represent the Appellee Allstate Insurance Company. Thank you for your time. The district court correctly concluded that Mr. Trucy was not entitled to recover duplicative insurance payments for the payment for two properties based on a single premium payment. I believe Judge Raggi, if I'm pronouncing that correctly, and I apologize if I'm not. No, correct. Correct. Okay. And Judge Calabresi hit upon those points, which is he didn't take he being the appellant didn't take any position in the underlying court that he didn't own 285. I'm having a little trouble hearing you. Could you speak a little bit louder? Yes, your honor. Can you hear me now? Is that better? Yes. Thank you. Yes. So contrary to the position taken in the district court, Mr. Trucy now on appeal claims he didn't own 285 Coleridge and that the but even even if we assume that he did own it for these purposes, there's a difference in the extent of damage. I mean, I don't know that the two properties are interchangeable. The policy limit was not paid out on the other property. The Exeter property was the main residence. There may have been greater damage there. I mean, maybe all state would have a claim for a set off or something, but I don't think you can simply say one washes the other. Your honor, we didn't say that one washes the other. What we said was the district court seemed to say that. It seemed to think that the policy had been paid to the limit, which I think the record shows is not the case. Is that correct? That's correct. I think that there was a factual error on that particular fact, but under the Tipsey Coachman rule, which is set forth in Jennings versus Stevens, which is the U.S. 2015, that the this court can can affirm it even though the decision, even though that one particular fact was incorrect. And in fact, it's not just the fact that's incorrect. In other words, Mr. Tootsie collected $185,000 on the college property. But if he sustained more than that in damage on the Exeter property, he could have recovered another $170,000 or something like that. Maybe minus the 50 that he got from the agent. But you know, the question is how much damage was there to the Exeter property? Your Honor, there was, as the court correctly indicated in its prior question, there was no policy of insurance in place on the Exeter property at the time. That's the question. So let's let's focus on that and not on this question of in place or whether there was a tort suit that properly goes to the reason to the fact that there wasn't a policy in place. Yes, Your Honor. That that's exactly where I was trying to get to. I believe the court's questions if are answered. If you look at can you not hear me, Your Honor? No, I can hear you. Okay, I have it turned up. Okay. I believe the court's questions are answered in some of its precedent. In 84, sorry, in Fletcher versus Standard Fire, which is 85th sub 3rd 386 Eastern District of New York 2016. And also 84 Albany versus Standard Fire 13 F sub 3rd 241. That specific question is answered. So the insured didn't just fail to render a premium payment after two renewal notices were sent for the property on both 285 and on the Exeter property. He didn't just fail to submit a premium one year. It was three years. Did he get renewal notices on the Exeter property? Was it your responsibility to send him failure of renewal property notices on the Exeter property? Or was it his responsibility to tell you that he wasn't getting them? I don't care what he got on the Coleridge property. That's beside the point. The question is the Exeter property. Yes, Your Honor. On the Exeter property, he got two renewal notices. He didn't renew. So the policy lapsed. And to answer your question specifically as to whose obligation it is, if the court looks at Fletcher, which I cited previously, and also 84 Albany, and under the policy itself and the governing regulations, the duty is squarely on the insured to notify. The opposing counsel says that the statute puts the duty on you except for that one-year grace period. How do you answer that? Actually, I'm not sure that that's what opposing counsel is saying. I believe his argument is that there is no particular provision in the NFIP, National Flood Insurance Policy, that or the manual that specifically deals with this particular case and then tries to go to state law or the law governing insurance, which isn't what this court, sorry, what has been held in this court and other courts, which is that the onus, that the burden of notifying the insurance company is squarely on the insured. You can't sit in your house, your house, Exeter property, for two renewal cycles and not receive a policy of insurance or pay a premium for that and say, you can't say that I didn't know, I didn't have coverage. He sat in his house for over two years. Let me be sure I understand the chronology. When you say he got two renewal notices, it's the second renewal notice, again, make sure I'm correct on this, that prompted him to send the check to the broker that then turned out to be misapplied, right? That is 100% correct, so at that point, at that point, his argument is, I thought I had coverage on the property at issue. Now, the next year comes and he is not sent a renewal notice on that property because in the insurance view, the insurer's view, it lapsed. Am I right? That's what happened here? Yes, Your Honor, 100%. So, you're saying that if he, in good faith, thought he was covered because of the check he gave to the broker, when the next year came around and he didn't get a renewal, he was obligated to tell you that. Is that what this reduces to? Yes, Your Honor. He further argues, though, that the one-year rule doesn't apply at that point, a year later, because there was no renewal notice prepared. I think that's what he's arguing. And so, therefore, that rule doesn't even apply. How do you respond to that? Well, I think if you, the burden is still on the insurer. I'll be 100% clear. I'm not sure I understand the question or the argument, but my answer is, Your Honor, the burden doesn't shift. You don't get, he, as a homeowner, under the National Flood Insurance Program. I think the point is, before you said he received two renewal notices, and as Judge Radji has pointed out, that was, he responded to the second of those notices by sending in his check. A year later, no renewal notices were sent, right? Correct. And so, his complaint is, at that point, the provision isn't triggered because no renewal notices were even prepared. And so, therefore, that provision doesn't apply at all. That's my understanding of his argument. Respectfully, I think his argument, I think the case law is very clear on his argument about whose burden it is to determine whether or not they have insurance under the National Flood Insurance Program, which is federally subsidized every year. And he sat there, not just for the first year, but for the next year as well. Okay. Now, could you turn to the torts claim? Yes. Why isn't this a perfectly standard torts claim? That is, if the agent was your agent, which the district court found, but let's for this moment make that assumption, then why wasn't the agent's failure give rise to damages, negligence, damages, because the policy would have been, or at least it is arguable that the policy would have been in effect, but for that failure. So, your honor, the argument is simply, not simply, the argument is that the district court incorrectly found that the agent that was sued by the plaintiff and settled with by the plaintiff. That doesn't matter if you were negligent, if you are responsible for the agent, the fact that you, that one settles with the servant doesn't mean that the master isn't also liable. I mean, that's perfectly obvious. So, the question is, why aren't you liable for whatever damages the servant didn't pay? Your honor, because this claim is preempted, and I also would... Why, why is it preempted? Because... That was the question I asked the other side, who said I don't understand, but that's his problem. Tell me why it was preempted when this was not a renewal, if it was a renewal, then it would be preempted under most of the cases. But most of the cases say if it is a new policy, it is not preempted, and the Fifth Circuit says that once you are outside the grace period, it is a new policy. Now, there was, it could be a question of fact as to whether you are in or outside the grace period, but your whole brief is that you didn't get it until after, so that I think you have to take you to concede the fact that this was after the grace period. So, why was this not outside of that period and not preempted? Which brings me back to my previous question, which is if it isn't preempted, then why isn't it a plain and simple tort, state tort case, which we shouldn't decide, but just dismiss without prejudice and have the state courts clearly, as a matter of state law, decide the whole thing itself. So, your honor, my position is that it is preempted, so I can't really articulate or argue well that it's not, and let me further say to the court, if I can. Why is it or if we were bound by the Fifth Circuit rule, we would be bound to say it wasn't preempted. So, there is at least an argument. I mean, you know, we don't necessarily follow the Fifth Circuit, but at least a strong argument because another circuit found that it isn't preempted. Yes, there is the Campo decision that your honor is referring to out there. I'm well aware of the I believe Campo was incorrectly ruled on by the Fifth Circuit and the case that the parties in this case brought to the court, which was the Remand versus State Farm Fire and Casualty, which was actually relied upon very heavily by the plaintiff with regard to this. Look, we can decide ourselves what the law is, okay? Yes, your honor. I don't think they have waived the tort suit or forfeited it. So, help me out as to why this is preempted, and if it is not preempted, help me out as to whether we should decide it or simply dismiss it without prejudice and let state courts decide it. Okay. So, your honor, the WIO in this case, the write your own insurer, is all state, right? And it stands in the shoes of the federal government. And the case law across the country is legion with regard to NFIP, National Flood Insurance Policies, and Standard Flood Insurance Policies. But all of those cases deal with renewals. Are you arguing to us that this is a renewal?  No. Assuming we were to agree that he's got a contract, that if his contract claim is valid, this is a renewal, not a new policy. I'm just trying to figure out what your argument is here. I would have thought that was your argument, that this is not a new policy on his theory. But I don't understand. I'm not even sure this argument is made in your brief, but that's another question altogether. Well, the... Do you understand we don't understand your argument? That's the point of Judge Calabresi and my questions. We don't understand what your preemption argument is. Okay. The preemption argument is that the WIO stands in the shoes of the federal government and that any tort claim against the WIO is preempted by federal law. All tort claims arising out of or under are preempted against the WIO. They are not as this court, and I think where this connect is, they are not preempted with tort claims against the agent of the insured, which is spelled out in the regulations. And in this case is going to be the Rodriguez. And I think it was Riley. I get the name wrong. And it's their agent. And so in that respect, it isn't the claim. Any call state as the WIO is preempted. Where do you lay out your preemption argument in your brief? Well, did you lay it? Did you make a preemption argument in the brief? It dovetails, Your Honor. No, no. Tell us where it is in your brief, because I think Judge Chin is being clearer than I. I'm not sure I see it at all. You may have abandoned preemption by failing to argue it in your brief. If that's not the case, point us to the pages. Yes, Your Honor. I appreciate the question. And as I was going to say, under the Riemann case, which plaintiff heavily read, where is it in your brief? I'm trying. That isn't the question. Preemption is not specifically argued in the brief, but it dovetails what I was trying to explain to the court. It dovetails into the agency, the agent discussion that is argued at point three. Well, you see, I can understand that the agency question might be that the district court erred in finding as a matter of law that he was the agent. That's not a preemption question. And I am concerned as to whether we even reach preemption here when it's not argued to us as an error or as a basis for upholding the district court's decision, rather. I, excuse me, Your Honor, I understand your position. I don't believe that, and I referred to it earlier, under Jennings v. Stevens, a U.S. 2015 decision by the United States Supreme Court, an appellee may argue for the affirmance of a judgment in its favor for any reason. Yes. Yes, but wouldn't the sensible thing if the district court didn't reach the preemption argument because it ruled for you on the tort suit and an error, isn't the appropriate thing for us to do to send it back to the district court to say it erred, to say that if there is a preemption argument, we should look at it with adequate briefing because we have no briefing, and frankly, the discussion by you and opposing counsel hasn't helped me at all on that rather difficult question, and then decide whether there is preemption, and if there isn't preemption, whether it should be in state court or federal court, but send it, rule against you on the error that was made because we're really not in a position to decide this other on the basis of what you have told us. We could if we had enough, but I don't see how we can. Judge Radziwi, to respond to your question, I believe that Jennings v. Stevens speaks of the record and not the briefs as far as an appellee being able to and then we'll let Mr. Yaffe have his rebuttal. Yes, Your Honor. So, in this respect, I believe that this court under Jennings v. Stevens can affirm the district court's ruling, even if it erred on the issue of agency, and that's under Rehman v. State Farm Firing Casualty Company, which is argued in both briefs. Thank you, Your Honors. Thank you, Mr. Yaffe. Sorry, I had to unmute. Well, I guess I should just leap into what the entire conversation has been about. I would respectfully submit that it would be improper to remand on the preemption issue, which was not raised before the district court, which was not raised to this court in the brief by counsel for Allstate, and the district court proceeded with an understanding that it had jurisdiction over the issue. It was on the cusp of ruling in Mr. Tucci's favor on that issue, except it went into this detour over this false equivalency between the properties, which I believe Your Honors all understand, based on your questions, there's no relationship, there's no proper relationship between a primary residence and a secondary investment property. Well, let me suggest to you how it might come up, and you can tell me why I shouldn't be thinking along these lines. Let me suggest to you that there might be a question as to whether the was Allstate's agent in this regard, and that's because the policy notice to you expressly said that you were to send your check to a post office box, and instead you gave it to Mr. Rodriguez, and I understand all the arguments for why he's Allstate's agent, but there might be a question as to whether he was an agent for this purpose, and you yourself advance arguments that you had an arrangement with Mr. Rodriguez for him to be your fiduciary in this connection. So, there might be questions of fact on that point, and if there are questions of fact on that point, there might then be a question about whether or not this can be heard at all in federal court because of the issue of preemption. So, if you want to say why I'm wrong in viewing either that, the preemption question that way, or the agency question that way, I'd like to hear why I shouldn't be thinking along those lines. Well, Your Honor, there's already been full testimony at a federal court deposition in this case. There was not just the agent from Allstate, but there was Allstate's representative who expressly confirmed during her deposition that there is nothing improper in delivering it. I understand that, but the district court could not make findings of fact on disputed facts. Right, and there's no dispute that there is nothing improper. There's no genuine material dispute. You agree that the notice told you to send it to a post office box and they didn't do that? Yes. As I understand, every other payment you made, you made that way, except your client, that is, except for this one. I don't know that that's the case. Then I may have misunderstood the record. There was evidence in the record. Well, first of all, the Allstate representative said that there's nothing improper in delivering it to the local agent. It's a matter of whether there was agency in that particular. It's not a matter of whether... And it might be resolved in your favor. I'm not arguing otherwise. I'm suggesting that there may be a question of fact. That's all. Okay, well, the notion that... You're not asking us to remand with instructions for judgment to be entered in Mr. Tucci's favor, right? You just want us to remand. Well, I was asking for judgment as to liability in Mr. Tucci's favor and a remand for the very much. Lots of complicated issues and what looked like a simple insurance case to begin with. The court will reserve a decision.